284 P.2d 216

**Albert T. SWALLOWS, Claimant, Plaintiff, Appellee and Cross-Appellant,**

v.

**CITY OF ALBUQUERQUE, Employer, Mountain States Mutual Casualty Co., Insurer, Defendants, Appellants and Cross-Appelles.**

No. 5825.

Supreme Court of New Mexico.
May 9, 1955.

Rehearing Denied June 16, 1955.

Frank L. Horan, Albuquerque, for appellant, City of Albuquerque.

A. T. Hannett, G. W. Hannett, W. S. Lindamood, Albuquerque, for appellant, Mountain States Mut. Casualty Co.

Joseph L. Smith, Lorenzo A. Chavez, Arturo G. Ortega, Albuquerque, for appellee and cross-appellant.

COMPTON, Chief Justice.

On March 20, 1953, claimant instituted this action for workmen's compensation for an accidental injury sustained by him on May 24, 1949. The cause was tried to a jury and from an adverse judgment, appellants bring the cause here for a review of alleged errors. The failure to provide safety devices is made the basis of the judgment against the city, consequently, the employer's appeal rests upon the determination of the appeal by the insurer.

Appellee was employed by the Albuquerque Police Department, and the accident occurred while he was riding a motorcycle. He turned into the intersection of two streets, proceeding at the rate of approximately 15 miles per hour. The motorcycle went out of control as the result of striking a light covering of sand on wet pavement and the rear wheel of the vehicle skidded, or "fishtailed", as claimant made the turn. He was successful in righting the motorcycle and it fell to the pavement, slamming claimant down upon the pavement and coming to rest upon his left leg which was pinned between the motorcycle and the pavement.

Police Chief Paul A. Shaver, who either helped pick up claimant, or who arrived at the scene of the accident very shortly thereafter, offered him a doctor and hospitalization. Claimant, thinking that he had not been seriously injured, declined medical treatment. He was taken into a house near by, where a lady gave him cold water and applied cold towels to his forehead. He was then driven back to the station by Chief Shaver and one of his coworkers. His knee was bleeding and his back was sore, so he went home, remaining there one or two days. A written report of the accident was made.

After the interval spent at home, claimant remained stiff and sore, but feeling that the quicker he began to get about the better he would be, he returned to work. After a few days his pain subsided and he thought no more about his injury. He continued to work, carried on his normal duties, and experienced no further symptoms of injury until the latter part of December, 1952.

There was considerable testimony respecting claimant's physical activities during this extended period. He was a very active police officer and in addition engaged in construction work from time to time; he went deer hunting and was a member of the Shrine drill team. He suffered no difficulty in performing any of these activities until a few months before the present claim was filed. Then he began to have numbness in the left buttock, the general left crotch area. Although he continued with

his duties as a police officer, he had almost constant pain, which caused him to cease all of his outside activities.

The main contention of appellants is that claimant has not complied with the provisions of § 59–10–13, 1953 Compilation, regarding notice of accident and injury to be given an employer, the pertinent parts of which read:

"The compensation herein provided shall be paid by the employer to any injured workman entitled thereto in semi-monthly instalments as nearly equal as possible excepting the first instalment which shall be paid not later than *thirty-one* (31) days after the date of such injury. Any workman claiming to be entitled under this act * * * to compensation from any employer on account of injury suffered by accident arising out of and in the course of his employment shall give notice in writing of such accident and of such injury to such employer within thirty (30) days after the occurrence thereof, * * * Provided, that no such written notice shall be requisite where the employer or any superintendent or foreman or other agent in charge of the work in connection with such injury occurred had actual knowledge of the occurrence thereof. * * In event of the failure or refusal of any employer to pay any workman entitled thereto any instalment of the compensation to which such workman may be entitled under the terms hereof, such workman shall be entitled to enforce the payment thereof by filing in the office of the clerk of the district court a claim * * * not later than one (1) year after such refusal or failure of the employer so to pay the same. * * *" (Emphasis ours.)

The jury found upon special interrogatory that the defendant employer had notice of a latent injury to claimant; that such notice was given in January of 1953 by claimant to George V. Thompson, city purchasing agent; and that Thompson led claimant to believe compensation would be paid to him. Claimant makes no attempt to uphold the special findings of the jury in this connection, but instead relies upon the proviso of said section which dispenses with the requirement of written notice where an employer, superintendent, foreman or other agent in charge of the work had actual knowledge of the occurrence of the accident giving rise to the injury.

It is obvious that the employer had actual knowledge of the 1949 occurrence but that does not solve the question presented. Clearly, actual knowledge as contemplated by the act means actual knowledge of a compensable injury. In latent injury cases the workman is not entitled to compensation, nor can there be a

failure or refusal to pay until the injury becomes apparent. Noticeably, the statute expressly bars the filing of suit until 31 days have elapsed from such failure or refusal to pay.

In Anderson v. Contract Trucking Company, 48 N.M. 158, 146 P.2d 873, 875, we said:

"* * * when a latent injury becomes apparent it is only then that the workman is entitled to compensation and that there could be a refusal to pay which would start the year to operate.

"* * * Holding that the statute begins to run from the time of accident instead of from the time of compensable disability or loss, in effect makes the statute begin to run before the cause of action accrues. * * *"

In Spieker v. Skelly Oil Co., 58 N.M. 674, 274 P.2d 625, 629, in passing upon the question of notice, we said:

"A case not in point but enlightening in this connection is Anderson v. Contract Trucking Co., 1944, 48 N.M. 158, 146 P.2d 873, 875. That decision held that the statute of limitations was not a bar to a claim in respect to a latent injury. In that case, Justice Mabry stated:

"'"* * * It is mere horse sense that the employee can't be entitled to compensation until the injury resulting from the accident becomes compensable, and when a latent injury becomes apparent it is only then that the workman is entitled to compensation and that there could be a refusal to pay which would start the year to operate."'"

The rationale of these cases is convincing that time was tolled for the beginning of payments until the employer was notified pursuant to the act that appellee was claiming compensation resulting from the 1949 accident. See also State ex rel. Mountain States Mutual Casualty v. Swope, 58 N.M. 553, 273 P.2d 750 and Ogletree v. Jones, 44 N.M. 567, 106 P.2d 302.

Following the 1949 accident, so far as the record shows, Swallows said nothing to anyone connected with the city or the insurer until Miss Snyder, a clerk in the office of the purchasing agent, came to Swallows at the city hall in the latter part of February and asked if a doctor bill for x-rays, dated February 20, 1953, was for retirement; whereupon, Swallows informed her that it concerned his compensation for the 1949 injury. She then told him the Mountain States carried the compensation payment for that year and to mail the bill to that company. Swallows did so and it was received by the company on March 17, 1953. Three days later he filed his claim, and since February had only 28 days that year, it is clear that the suit was prematurely filed.

The judgment will be reversed and the cause remanded with instruction to dismiss appellee's claim. No cost is to be assessed against appellee, and it is so ordered.

SADLER, McGHEE, and KIKER, JJ., concur.

LUJAN, J., not participating.